Bailey *v.* Myrick.

———◆———

ELIAS BAILEY, *in Equity, versus* LOT MYRICK *& als.*

The taking possession of the mortgaged premises in the presence of two witnesses, for the purpose of foreclosure, under our statutes, does not necessarily impose upon the mortgagee the obligation to account for rents and profits.

If the mortgagee take such possession, and he, and those claiming under the mortgager, allow the latter to remain in possession and take the rents and profits, the mortgagee should not be held to account for them.

Bailey *v.* Myrick.

A master in chancery is not bound to report the evidence, but only the facts proved. He may examine the parties as to the receipt of rents and profits, or the possession of the estate, although one of them may be an administrator.

On Exceptions to the report of the master, by the defendants.

The case is fully stated in the opinion.

*P. Thacher,* for the defendants.

*Ruggles,* for the plaintiff.

The opinion of the Court was drawn by

Tenney, C. J.—It having been decided in this case, 50 Maine, 171, that the plaintiff is entitled to redeem the premises mortgaged by Nathan W. Sheldon to Lot Myrick and others, on Oct. 21, 1837, a master was appointed to ascertain certain facts and state an account, according to the principles declared in the opinion of the Court, and report the same.

The report of the master has been made and returned; and the case is now before us on exceptions thereto.

The master was required to ascertain the present value of all the premises, covered by the mortgage to Lot Myrick and others, not including permanent improvements made on any part since the mortgage. And also to find the value of the several portions of the mortgaged premises, as held by different individuals under the mortgager, and therefrom fix the amount for each to contribute respectively in the redemption. This service, the master did not perform, the plaintiff having waived all claim to contribution from other parties, and no proof was offered on this branch of the case, as stated in the opinion of the Court, and no computation was made thereon. This omission is one ground of the exceptions taken by the defendants. It would seem, that those persons who held portions of the premises mortgaged, under the mortgager, were interested to know what they

should equitably contribute towards the redemption, of the amount of the notes secured by the mortgage that were not paid by the rents and profits, for which the mortgagees were bound to account, in order that each might hold his portion free from the incumbrance, by payment thereof. And, if there was an excess of rents and profits above the amount of the notes, each would be interested to be legally informed how that excess should be apportioned and, that therefrom the equities might be adjusted and they severally be able to hold an indefeasible title to their respective portions, independent of one another, who held under the same mortgager.

We infer from the report of the master that no party appeared before him for the purpose of presenting proofs and having these questions settled. It certainly would have been desirable, that each should understand his rights and obligations, and, by the introduction of evidence, have a final disposition of this long, litigated controversy. But how far the master was required to take measures to have proofs introduced, on this part of the matter submitted, it is not now the business of the Court to inquire.

Upon the principal question, which is the amount due upon the notes secured by the mortgage of Oct. 21, 1837, the master has made an alternative report, by stating the sum due upon the notes, on May 6, 1861, and that the net rents and profits, allowed by him as accruing from the mortgaged premises, excluding the lots sold to Hubbard and Stetson each year, exceeded the amount due on the mortgage, by a sum stated.

The facts are stated in the report, touching the occupation of the premises mortgaged, on Oct. 21, 1837, subsequent to the possession taken in behalf of the mortgagees, for condition broken, and to foreclose the mortgage on July 29, 1850, as follows:—

"From the testimony before me, it appeared that about the time possession was taken by the defendants, as appears by the papers in the case, one David Lawrence hired the

premises of E. Wilder Farley by a written agreement, said Farley acting as agent for the defendants; said written agreement was not produced, nor its contents proved. Lawrence immediately moved into the house on the premises, and occupied the same jointly with Bartlett Sheldon, until early in the winter following, when he left and never paid any rent to any one. Bartlett Sheldon, who was in the occupation of the premises, when possession was taken, continued in the sole occupation thereof, excepting while Lawrence was there, until his decease in the summer of 1853, and his widow has remained in the occupation of the premises, up to the present time, managing and controlling the property."

"There was no proof showing the actual receipts of rents and profits by the defendants, or any interference on their part with the occupation of the premises, otherwise than the possession taken by them on July 29, 1850, and the occupation of Lawrence aforesaid."

The plaintiff claims that the rents and profits should be allowed in extinguishment of the mortgage, and the balance be paid by the defendants, who hold under the original mortgage and who caused possession to be taken for condition broken. The defendants, who took possession, on the other hand, insist that, inasmuch as they never were in the occupation of the premises and received no rents and profits, they are not bound to account therefor, and are entitled to receive the full amount remaining unpaid upon the notes.

The taking possession of the mortgaged premises, after condition broken, for the purpose of foreclosure, in the presence of two witnesses, according to the provisions of R. S. of 1841, c. 125, § 3, clause 3, does not necessarily impose upon the mortgagee the obligation to account for rents, if he should not receive them. Such is the fair construction of the statute cited in section 23 and that of the revision of 1857, c. 90, § 13. It has been decided in Massachusetts, under a statute in this respect similar to those referred to in this State, that possession taken in this mode, by the consent of the mortgager, who may remain in pos-

session for three years, the mortgage will be foreclosed, the latter being regarded as a tenant at will of the mortgagee. *Swift* v. *Mendall & al.*, 8 Cush., 357. The Court, in the case just cited, in referring to the cases of *Thayer* v. *Smith*, 17 Mass., 429, and *Hadley* v. *Houghton*, 7 Pick., 29, treat a good open and peaceable entry made, and actual possession taken, sufficient to operate as a foreclosure in three years, notwithstanding the mortgager had remained in possession.

Whether the entry made in behalf of the original mortgagees in this case has been followed by a continued possession, so that a foreclosure would have taken place, if the suit had not interrupted the running of the three years from the time the entry was made, we are not now called upon to decide ; but it will not be said that, if those holding under the mortgager had been in the receipt of the rents and profits, that they had been so received by the mortgagees that they are bound to account therefor. Between the mortgager and mortgagee, the latter, when in possession, must account for the actual rents and profits received by him. *Gordon* v. *Lewis & al.*, 2 Sumner, 143, 155, which was a case where the mortgagee had taken possession for condition broken, to foreclose the mortgage. If he had not received rents and profits, the implication is, that he was not bound to account, unless they were lost or reduced by his wilful default or gross negligence. 4 Kent's Com., 166, 5th ed.

The case of *Charles* v. *Dunbar*, 4 Met., 498, is relied upon by the defendants, and we think it is in point. The statute under which this case was decided was in the revision of the statutes of Massachusetts in 1836, c. 107, § 15, which is similar to the one of this State under which the entry was made to foreclose the mortgage, so far as it provides that the mortgagee shall account for rents and profits. In that case it was held that the mortgagee was not bound to account for rents and profits to a second mortgagee.

The right of Elias Bailey, the plaintiff, is derived by deed

from Bartlett Sheldon, through several mesne conveyances, and from the levy of an execution against him in favor of one Jackson and others, upon certain rights of redemption, under the mortgages from Bartlett Sheldon of portions of the land covered by the mortgage from N. W. Sheldon to Lot Myrick and others, of Oct. 21, 1837; all these rights of the plaintiff were derived prior to the taking possession in behalf of the original mortgagees, on July 29, 1850. Whether his right under the levy had become absolute or not is not deemed material. He suffered Bartlett Sheldon to remain in possession after the levy, under an agreement, or as a trespasser. He was entitled to his action of trespass against Bartlett Sheldon, if he held that relation, by which he could have recovered the rents and profits as damages; if the former, the possession of the tenant was that of the plaintiff. *Fox* v. *Harding,* 21 Maine, 104.

The occupation of Lawrence was so short and so uncertain in its character and extent, (the agreement, which it seems was made between him and the agent of the mortgagees, not having been in evidence, and, being joint with Bartlett Sheldon, at most,) that it cannot create any liability on the mortgagees to account for rents, which the master's report states they never received. We think that the defendants were not bound to account to the plaintiff for any rents and profits.

The third exception has no foundation. The master was not bound by his authority from the Court to report the evidence; but, on the other hand, he was required to ascertain facts and state them in his report.

It is somewhat doubtful whether the statute of 1859, c. 79, will authorize an executor or administrator to testify, who holds the relation to the case which E. Wilder Farley held in the present one.

The witness Farley was the administrator of a deceased party, who would have been necessarily a party to this suit if living and within the jurisdiction of the Court, and the

suit could not, with propriety, proceed without the administrator, as a party, to the litigation.

It does not appear, from the report, what facts the defendants wished to establish by the testimony of two of their number.   If it related to no matter connected with the transactions in controversy, in which they had knowledge superior to others, but it was matter of opinion touching the value of the several portions of real estate, which the master was directed to find, they would seem inadmissible. But, if the object was to show that the defendants had received no rents and profits, or had not a certain and actual possession after the entry to foreclose the mortgage, it was in analogy to equity practice in such cases, that the master should exercise the authority to examine the parties in the cause, upon oath, touching such matters, notwithstanding one was a party administrator.

We think the exceptions should be sustained so far as to allow the parties to introduce evidence before the master upon the last four matters submitted to him, which the plaintiff waived, and to receive the testimony of parties so far as the same may be admissible according to the foregoing.

*Report recommitted.*

RICE, MAY, GOODENOW, DAVIS and KENT, JJ., concurred.